IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
                                    )
JANECE MICKENS,                     )
                                    )
            Plaintiff,              )
                                    )
      v.                            )      1:11cv1117 (LMB/TCB)
                                    )
LOCKHEED MARTIN CORPORATION         )
MISSION SYSTEMS & SYSTEMS (MS2),    )
                                    )
            Defendant.              )
                                    )
```

<u>MEMORANDUM OPINION</u>

Plaintiff Janece Mickens ("Mickens"), proceeding <u>pro se</u>,
has filed a seven-count[1] complaint alleging gender, race, and age
discrimination under Title VII of the Civil Rights Act of 1964,
the Civil Rights Act of 1866, the Age Discrimination in
Employment Act, and analogous state law claims under the
Virginia Human Rights Act.  She also alleges a conspiracy to
interfere with her civil rights in violation of 42 U.S.C.
§ 1985(3) and a breach of the implied covenant of good faith and
fair dealing in her employment contract.  Defendant Lockheed
Martin Corporation has filed a Motion for Summary Judgment.
Plaintiff indicated she would not appear for oral argument,

---

[1] In her complaint, plaintiff lists seven "counts" in addition to
seven "causes of action."  Because the allegations throughout
her complaint are often unclear and overlapping, the Court will
address those claims that appear to challenge plaintiff's
employer's conduct.

which was then cancelled, and the motion has been evaluated
solely on the written materials filed by the parties.  For the
reasons elaborated below, defendant's motion will be granted and
judgment will be entered in defendant's favor.

## I.   BACKGROUND

Mickens, a fifty-year-old African-American woman, first
began working as a contract administrative assistant for
defendant Lockheed Martin through staffing company DATROSE.
Compl. ¶ 11; Def.'s SOF ¶¶ 1-2.[2]  In approximately April 2009,
she was hired by Lockheed Martin to provide administrative
assistance to two vice presidents (at the end, Martin Mayer and
Anne Marie Squeo) as well as to their staffs.  Def.'s SOF ¶¶ 3-
5.  On average, plaintiff worked approximately four to five
overtime hours per week, for which she was properly compensated.
Id. ¶ 5; Pl.'s Dep. at 53:4-7.  During her tenure, plaintiff
received a positive performance review and a salary increase.
Def.'s SOF ¶ 6.

In September 2009, Lockheed Martin opened a position for a
new administrative assistant who would support one of the two
vice presidents for whom plaintiff had been working.  Def.'s SOF
¶¶ 7-8.  Plaintiff applied for the new position but withdrew

---

[2] For purposes of this background discussion, the Court will rely
on defendant's Statement of Facts ("SOF") where it cites to
plaintiff's deposition or to documentary evidence.  Plaintiff
did not object to the Statement of Facts.

from consideration in December 2009, informing defendant that she preferred to stay in her current job based in Manassas, Virginia, where she also lived, rather than undertake the longer commute to Washington, D.C., where the new position would be based.  Id. ¶¶ 8, 10.  Plaintiff now explains that she declined the chance to interview for the transfer because another highly competitive candidate, Victoria King, was also being considered. According to plaintiff, Ms. King was a former coworker of Ms. Squeo, was overqualified for the administrative assistant job, and had a "very impressive" resume.  Pl.'s Dep. at 96:11-97:4; 103:8.  Ultimately, Ms. King also withdrew from consideration. Id. at 97:10-12.  When the position had not been filled by January 2010 and Ms. King had withdrawn her application, plaintiff again expressed her interest in and interviewed for the position; however, she was not chosen for the position.  Id. at 122:8-14; 123:5-7; 124:5-125:21; Pl.'s Opp'n at 19.

According to Lockheed Martin, "[p]laintiff was never formally offered the transfer position because she was under investigation…for repeatedly misusing her corporate credit card," which employees were permitted to use only for business purposes.  See Def.'s SOF ¶ 14; Pl.'s Dep. at 136:14-137:4. Plaintiff does not dispute that her supervisor approached her

about personal charges she had made on the corporate card,[3] and she does not contest that she made such charges.  Lockheed Martin's investigation into plaintiff's credit card misuse included emailing her to request an explanation for the suspect charges and referring the investigation to Lockheed Martin's Administrative Review Committee ("ARC").  See Def.'s Ex. 5 (January 29, 2010 email exchange between plaintiff and Al Stoffa regarding personal charges to plaintiff's corporate credit card); Def.'s SOF ¶ 18.  During both the internal Lockheed Martin investigation and this litigation, plaintiff has admitted that she used the card for personal purchases.  See Pl.'s Dep. at 138:19-20; Def.'s Ex. 5; Pl.'s Opp'n at 12-13 (admitting that, over an eight-month period, plaintiff "charged several thousand dollars' worth of personal items on the card").  According to defendant, plaintiff made personal charges in the amount of $7,973.89 over a six-month period.  Def.'s SOF ¶ 16 (citing Def.'s Ex. 5).

After the conclusion of the ARC's proceedings, plaintiff's supervisor, Colleen Parks, contacted plaintiff at home to arrange a meeting to discuss the ARC's decision.  On March 8, 2010, before the scheduled meeting, plaintiff resigned by

---

[3] Although plaintiff testified in her deposition that this conversation may have occurred in October or November 2009, the remainder of the record indicates that January 21, 2010 is the correct date.  Compare Pl.'s Dep. at 141:14-21, with Pl.'s Opp'n at 13, and Def.'s Ex. 5.

failing to report to work and then mailing her keys and employee badge back to Lockheed Martin.  Pl.'s Dep. at 191:2-195:7.  She filed a complaint with the Equal Employment Opportunity Commission[4] and subsequently brought this lawsuit on claims of race, gender, and age discrimination.

## II.  DISCUSSION

### A. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must view the record in the light most favorable to the nonmoving party.  See Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002).  The moving party must initially show the absence of a genuine dispute of material fact, and once it has met its burden, the nonmovant "must come forward and show that a genuine dispute exists."  Arrington v. ER Williams, Inc., No. 1:11cv535, 2011

---

[4] A copy of the EEOC charge is not in the record; however, defendant does not argue that this action is time-barred or that plaintiff failed to exhaust her administrative remedies or waived any of her current claims by failing to raise them before the EEOC.

5

U.S. Dist. LEXIS 144909, at *11-12 (E.D. Va. Dec. 16, 2011)

(Cacheris, J.) (citing Celotex Corp. v. Catrett, 477 U.S. 317,

325 (1986) and Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp., 475 U.S. 574, 586-87 (1986)).  The nonmoving party,

however, "must do more than simply show that there is some

metaphysical doubt as to the material facts."  Matsushita, 475

U.S. at 586.  Accordingly, the "mere existence of a scintilla of

evidence in support of the [nonmovant's] position will be

insufficient; there must be evidence on which the jury could

reasonably find for the [nonmovant]."  Anderson, 477 U.S. at

252.  Therefore, "[w]here the record taken as a whole could not

lead a rational trier of fact to find for the nonmoving party,"

summary judgment is appropriate.  Matsushita, 475 U.S. at 587.

   B. Discussion[5]

---

[5] The complaint includes several claims that are wholly without
merit and do not warrant extensive discussion.  First, the claim
under the Virginia Human Rights Act will be dismissed because
the Act applies only to employers with more than five but fewer
than fifteen employees, whereas Lockheed Martin employs well
over fifteen persons.  See Va. Code Ann. §§ 2.2-3900, 2.2-3903;
see also Blankenship v. City of Portsmouth, 372 F. Supp. 2d 496,
500-01 (E.D. Va. 2005) (construing predecessor statute, § 2.2-
2639).

Plaintiff also asserts a claim for conspiracy to interfere with
her civil rights in violation of 42 U.S.C. § 1985(3).  According
to plaintiff's deposition testimony, "the conspiracy is with
[five Lockheed Martin employees] getting together, try [sic] to
figure out how are we going to get [plaintiff] out of the door
in the most expedient and quiet way possible."  Pl.'s Dep. at
248:17-21.  Yet in her complaint, plaintiff simply alleged that
there is a "slight chance" that these persons conspired against

This action is based on plaintiff's perception that
Lockheed Martin did not treat her in a way that was "right,"
"fair," or "just."  Pl.'s Dep. at 257:19.  Instead of presenting
evidence to support cognizable claims to relief, however, she
relies on unsubstantiated hearsay, conclusory allegations, and
her own speculations as to defendant's motivations and conduct.
Because plaintiff has not offered more than a scintilla of
evidence tending to prove that she was the victim of any kind of

---

her.  She has offered no evidence uncovered during discovery to
bolster this allegation.  Moreover, as discussed further below,
there is absolutely no evidence of racial, gender, or age-based
animus that motivated defendant's treatment of plaintiff during
the course of her employment.  See Griffin v. Breckenridge, 403
U.S. 88, 102 (1971) (holding that a conspiracy under § 1985(3)
requires that "there must be some racial, or perhaps otherwise
class-based, invidiously discriminatory animus behind the
conspirators' action").  Accordingly, the conspiracy claim
fails.

In Count 7, plaintiff alleges that Lockheed Martin breached an
implied covenant of good faith and fair dealing in her
employment contract; however, this is not a cognizable cause of
action in Virginia.  See Devnew v. Brown & Brown, Inc., 396 F.
Supp. 2d 665, 671 (E.D. Va. 2005) ("[T]he Commonwealth does not
recognize a cause of action for breach of an implied covenant of
good faith and fair dealing in employment contracts, and in at-
will employment contracts in particular.").

Finally, in her opposition, plaintiff argues that she is
entitled to relief for intentional infliction of emotional
distress, although this cause of action was not included in her
complaint.  Even if properly pleaded, plaintiff's claim for
intentional infliction of emotional distress would have to be
dismissed as meritless on its face, as it is clear that Lockheed
Martin did not engage in conduct sufficiently "outrageous and
intolerable...that it offends against the generally accepted
standards of decency and morality." Jordan v. Shands, 255 Va.
492, 499 (1998).

discrimination, no reasonable jury could find in plaintiff's
favor.

### 1. Constructive Discharge

Plaintiff argues that she was constructively discharged
from her position when, because of her protected statuses,
defendant did not take complaints regarding her heavy workload
seriously and because it took too long to hire an additional
administrative assistant to lighten the burden. Pl.'s Dep. at
269:1-272:11. Under Fourth Circuit law, "an employee is
constructively discharged if an employer deliberately makes the
working conditions of the employee intolerable in an effort to
induce the employee to quit." Whitten v. Fred's, Inc., 601 F.3d
231, 248 (4th Cir. 2010) (quoting Martin v. Cavalier Hotel
Corp., 48 F.3d 1343, 1353-54 (4th Cir. 1995)) (internal
quotation marks omitted). Thus, a plaintiff must prove "(1)
deliberateness of the employer's actions and (2) intolerability
of the working conditions." Id.

First, plaintiff's claims about her working conditions do
not rise to the level required to prove constructive discharge.
Plaintiff's primary complaint appears to be that she was
assigned too much work, resulting in undue stress. She
maintains that, because she supported two vice presidents and
their staff, "she frequently felt caught in the cross-fire of
balancing the competing interest [sic] between the two separate

8

entities," and that she was subject to "conflicting
expectations, too much responsibility and, [sic] the wearing of
too many hats that left her in a continual state of emotional
and mental anguish and exhaustion."   Pl.'s Opp'n at 6.
"Dissatisfaction with work assignments, a feeling of being
unfairly criticized, or difficult or unpleasant working
conditions are not so intolerable as to compel a reasonable
person to resign" and thus do not establish a constructive
discharge claim.   Carter v. Ball, 33 F.3d 450, 459 (4th Cir.
1994).   As the Fourth Circuit has long recognized,

> [e]very job has its frustrations, challenges and
> disappointments; these inhere in the nature of work.
> An employee is protected from a calculated effort to
> pressure him into resignation through the imposition
> of unreasonably harsh conditions, in excess of those
> faced by his co-workers. He is not, however,
> guaranteed a working environment free of stress. The
> employment discrimination laws require as an absolute
> precondition to suit that some adverse employment
> action have occurred. They cannot be transformed into
> a palliative for every workplace grievance, real or
> imagined, by the simple expedient of quitting.

Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir.
1985).   In complaining about the stresses caused by being short-
staffed and subject to what she believes was "too much" work,
plaintiff has alleged no more than routine workplace grievances.

   Nor can plaintiff show that defendant acted deliberately to
make her working conditions difficult.   In the context of a
constructive discharge claim, an employer acts deliberately only

if its actions "were intended...as an effort to force the employee to quit." <u>Lauture v. St. Agnes Hosp.</u>, 429 F. App'x 300, 307 (4th Cir. 2011) (quoting <u>Whitten</u>, 601 F.3d at 248). There is no evidence that plaintiff was assigned additional work, treated poorly, or that defendant ignored her complaints in an effort to induce her resignation.  To the contrary, plaintiff acknowledges that, as a result of her complaints about her workload, Lockheed Martin opened a position for an additional administrative assistant.  <u>See</u> Compl. ¶¶ 22-23.

Rather than present supporting evidence, plaintiff has merely surmised that "to [her], it shouldn't take that long" to hire a new administrative assistant and that "clearly the fact that [she is] African American, female did not help," and that she "was just not taken serious about the stress [she] was under, the workload, demands and requirements," because of racial bias.  Pl.'s Dep. at 272:8, 274:14-20.  Yet plaintiff does not claim that anyone at Lockheed Martin made derogatory racial, gender, or age-based remarks or that persons outside of her protected classes were treated more favorably as to workload or related complaints.[6]  Indeed, she admits that her colleague

---

[6] Plaintiff points to two negative comments Ms. Squeo purportedly made regarding the attire and makeup worn by two interviewees for the administrative assistant position, which remarks clearly do not constitute race, gender, or age-based discrimination toward plaintiff.  <u>See</u> Pl.'s Opp'n at 9.

Pamela Garrett, also an African-American woman,[7] supported three vice presidents, compared with plaintiff's two.  See Pl.'s Opp'n at 4; Pl.'s Dep. at 50:3-51:7.  Although plaintiff theorizes that had she been a white man her concerns would have been addressed more expeditiously, this contention is mere supposition.  Accordingly, summary judgment will be granted in defendant's favor on the constructive discharge claim.

    2.  Failure to Transfer

Plaintiff further alleges that she was discriminated against when she did not receive the requested transfer to the new administrative assistant position.  In her complaint, plaintiff contends that she withdrew her transfer application in December 2009 because Ms. King was a "definite shoo-in" for the position and "had far more training and experience required for successful job performance as an AA"; thus, in plaintiff's view, "scheduling an interview would have been no more than a vain gesture in light of her competition."  Compl. ¶ 44.  Although plaintiff acknowledges that she does not believe that "there was anything improper about wanting to hire someone that you know," she still maintains that "recruiting from segregated sources i.e., social networks, leads to hiring that simply replicates societal patterns of racial segregation."  Pl.'s Dep. at 114:11-13; Compl. ¶ 45.

---

[7] The record does not indicate Ms. Garrett's age.

11

Defendant agrees that plaintiff was a member of a protected class and applied for and was qualified for the transfer to the administrative assistant position; however, defendant also correctly points out that there is not a scintilla of evidence that plaintiff's failure to receive the transfer was a result of her race, age, or gender. To the contrary, the evidence indicates that plaintiff was not transferred into the position because of the pending credit card abuse investigation. Any argument that plaintiff did not receive the transfer because of Ms. King's application for the position is meritless because Ms. King withdrew her application and never interviewed for the position. Plaintiff alleges that after Ms. King withdrew, Ms. Squeo interviewed plaintiff for the job and apparently indicated that she would receive it, although the transfer was frozen during the credit card investigation. See Pl.'s Opp'n at 19; Pl.'s Dep. at 243:13-244:9. The position was eventually filled after plaintiff resigned. Def.'s Mem. at 24. There is absolutely no evidence in this record that Lockheed Martin in any way preferred candidates who were not members of protected classes or that the credit card abuse investigation was not the true reason for the delay in processing plaintiff's request to transfer. Therefore, defendant will be granted summary judgment on this claim.

   3. Selective Discipline

12

Plaintiff argues that she was discriminated against when she was investigated for misuse of her corporate credit card whereas other employees who she claims similarly misused their cards were not disciplined.  She also complains that she was not explicitly told when contacted by the internal auditor that she was under investigation and that she was not permitted to obtain counsel or appear before the disciplinary review board in person.

"To establish a prima facie case of [] discrimination in the enforcement of employee disciplinary measures under Title VII, the plaintiff must show: (1) that [s]he is a member of the class protected by Title VII, (2) that the prohibited conduct in which [s]he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against [her] were more severe than those enforced against those other employees." Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993).  Plaintiff cannot establish factor (2)[8] and, accordingly, this claim must fail.

Plaintiff does not dispute that personal use of the corporate credit card is prohibited by company policy.  See

---

[8] Moreover, plaintiff voluntarily resigned before she could be disciplined.  Even if she had been terminated, however, plaintiff could not prevail on a disparate discipline claim for the reasons discussed below.

Def.'s Ex. 5 (email from J. Mickens to A. Stoffa); Pl.'s Opp'n
at 13 ("[P]laintiff admits to violating a company rule when she
used the corporate credit card for personal use."). Lockheed
Martin's "corporate credit card misuse" policy, dated February
5, 2009, establishes a process for investigation and discipline
related to such use.  See Def.'s Ex. 6A.[9]  Initially, transaction
data is mined to filter out transactions occurring during
travel.  For the remaining transactions, the policy establishes
a $500 threshold of materiality; charges that exceed the
materiality threshold are forwarded to an auditor to evaluate
whether the charges could have been business-related.  The
auditor will "contact the employee and manager providing the
transaction data in question and politely request an
explanation."  The employee's explanation, along with
transaction and other information, is then forwarded to human
resources personnel.  The policy further provides:

> Once an individual and manager have been noticed that
> the employee is suspect [sic] in using the Corporate
> Credit card for personal items, the manager should

[9] Plaintiff refers to what appears to be another company policy,
which is not included with the complaint or her opposition to
the instant motion.  See Compl. ¶ 81 ("[Case Investigator]
Section 3.4.1 - The investigator ensures that an employee who is
accused of wrongdoing is given an opportunity to provide her
account of the events to the case investigation.").  Lea Bethea,
the former Director of Human Resources at Lockheed Martin, has
averred under oath that the policy attached as Defendant's
Exhibit 6A was the policy governing employee misuse of company
credit cards during the relevant time period.  See Bethea Decl.
¶¶ 1-3.

meet with the employee to determine if the charges are work-related or personal. The manager must inform the site HRBP/site lead of the findings that they are indeed personal as opposed to business related.    If they are business-related, the audit team should be so notified.

If they are personal charges site HR will make an initial determination if the case should be worked with the employee's manager or if there is sufficient cause to pursue an investigation which could bring it to the Administrative Review Committee (ARC) chaired by HR and populated with Ethics, Security and Legal...

If the charges are found to be the first known use of the Credit Card for personal expenses and the expenses are less than $1,000, the manager may issue a Verbal Reprimand with concurrence from Human Resources.   The reprimand will insure [sic] that the employee understands that personal charges· may not reoccur under any circumstances even if the use was unintentional...

If the offense is for a total of charges exceeding $1,000, but under $5,000 and/or this is the person's second offense then the guidance to the manager is to seek an investigation from HR to determine the level of discipline.    However, if there are other circumstances such as lying to the investigator or non-payment of the charges than [sic] the site may recommend suspension while bringing the case to the ARC for review...

If the offense if [sic] for charges exceeding $5,000 and/or is the third time (or more) in 3 years that management has received notice of impropriety than [sic] the site must bring the case through the ARC for a determination.  At present, the precedent cases for the ARC show all employees who have been disciplined for this offense to be terminated if their expenditures exceed $5,000.   In rare instances, the recommendation might be suspension and would be determined based upon mitigating circumstances that are clearly spelled out and substantiated (emphasis added).

According to defendant, plaintiff charged $7,973.89 in personal expenses on her corporate credit card, well above the $5,000 threshold for automatic referral to the ARC and presumptive termination articulated in the Lockheed Martin policy.   In arguing that she was subject to improper discipline because of her gender, race, and age, plaintiff relies on what she perceives as the "attitude" of higher-ups at Lockheed Martin; however, she implicitly conceded the lack of evidence when she stated in her deposition that the basis for her age discrimination claim was that she has "read...places" that some employers harbor a discriminatory view about older workers, which "is an attitude that I believe could have existed." Pl.'s Dep. at 275:12-276:13.  She similarly theorizes, without factual support, that a man "might have just gotten a slap on the hand" had he engaged in the same misconduct.  Pl.'s Dep. at 153:4-7.

Plaintiff points to multiple Lockheed Martin employees who she suspects also used their corporate cards for personal purchases and were not disciplined.  See Compl. ¶¶ 64-65 (listing four Caucasian management personnel).  But, she admits that some of these suspicions are based on hearsay statements made by other administrative assistants "around the water fountain."  Pl.'s Dep. at 145:5-146:9.  She also claims that her supervisor admitted to using her corporate credit card for personal purposes "on occasion," and that she saw an executive

16

vice president give a check to his administrative assistant to reconcile his credit card bill. Pl.'s Opp'n at 13; Pl.'s Dep. at 145:19-146:4. Despite these allegations, plaintiff concedes that she is not aware of anyone else who charged a similarly high dollar amount of personal expenses as she and yet was not disciplined. Pl.'s Dep. at 153:20-154:8. Moreover, after plaintiff made these accusations during the course of this litigation, "[a]ll employees whom Plaintiff accused of using their corporate credit cards for personal purchases were investigated [by Lockheed Martin], and there was found to be no personal use on any of their parts." Cash Decl. ¶ 5 (declaration of Craig Cash, Director of Ethics and Business Conduct at Lockheed Martin). Lockheed Martin further avers that "[a]nyone who has used his or her corporate card for personal purchases in excess of $5000, since the issue date of [the corporate credit card misuse policy] has been terminated." Bethea Decl. ¶ 3. Plaintiff has not attempted to rebut this contention with admissible evidence, much less pointed to any misconduct that was comparable in severity to hers. Accordingly, plaintiff has wholly failed to make out a prima facie claim for disparate discipline.

Plaintiff also argues that she should have been told more explicitly that she was under investigation and that she should have been permitted to appear in person before the ARC and

17

represented by counsel, grounding these theories in principles
of due process under the Constitution.  First, there is no
evidence that defendant failed to adhere to its own disciplinary
policies in dealing with plaintiff, who was given an opportunity
to explain the suspect charges when she was contacted by
internal investigator Al Stoffa.  According to Craig Cash,
Director of Ethics and Business Conduct at Lockheed Martin,
"[t]here is no requirement among Lockheed Martin's policies and
procedures that an employee who is under review by the ARC must
be given the opportunity to appear in person before the ARC or
retain counsel."  Cash Decl. ¶ 4.  Moreover, because Lockheed
Martin is a private employer, any claim to procedural due
process fails due to lack of state action.  Kendall v.
Balcerzak, 650 F.3d 515, 528 (4th Cir. 2011) (noting the state
action requirement for a procedural due process claim).

### III. CONCLUSION

It is well-established that "no court sits to arbitrate
mere differences of opinion between employees and their
supervisors."  Hawkins v. PepsiCo, Inc., 203 F.3d 274, 281 (4th
Cir. 2000).  Plaintiff's complaints amount to no more than
routine workplace grievances and her dissatisfaction with the
disciplinary process used regarding her admitted misconduct.
Moreover, she has offered no evidence that Lockheed Martin acted
in any way based on her age, race, or gender.  The Court does

18

not "sit as a super-personnel department weighing the prudence of employment decisions made by" an employer.  Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 272 (4th Cir. 2005) (quoting DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998)) (internal quotation marks omitted). Accordingly, defendant's motion for summary judgment will be granted by an Order to accompany this Memorandum Opinion.

Entered this __5th__ day of July, 2012.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge